FILED
3/31/23 4:02 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 23-20097-GLT |
| **BRIAN MICHAEL FERRIS**, | Chapter 13 |
| *Debtor*. | |
| **BRIAN MICHAEL FERRIS**, | Related Dkt. Nos. 14, 31 |
| *Movant*, | |
| v. | |
| **AAMD, LLC**, *et al.*, | |
| *Respondent*. | |

Sean Logue, Esq.  
Sean Logue & Assoc.  
Carnegie, PA  
*Attorney for the Debtor*

P. Chad Schneider, Esq.  
18 W. Cherry Street  
Washington, PA  
*Attorney for AAMD, LLC*

### MEMORANDUM OPINION

The Debtor, Brian Ferris, slipped language into an *ex parte* scheduling order that a state court judge unwittingly signed. The language conceivably restores Ferris' legal title to a residence lost in a sheriff's sale six months earlier. Hours later – and before the judge or the deed holder realized what happened – Ferris commenced this bankruptcy case to invoke the stay under 11 U.S.C. § 362 and prevent modification of the state court order until he can cure and reinstate his foreclosed mortgage through a chapter 13 plan.

Two competing motions are pending before the Court. Ferris seeks to enforce the stay and compel delivery of a deed to his residence from AAMD, LLC, the entity who purchased the

property at the sheriff's sale.¹ AAMD not only opposes this request, it also seeks stay relief to proceed with an ejectment of Ferris from the premises.² Because the state court explained that it never intended to alter the substantive rights of the parties with the scheduling order, the Court finds that, despite any stay violation by the state court, AAMD is entitled to retroactive stay relief. To the extent not withdrawn, Ferris' request for relief is denied.

I. **BACKGROUND**

The material facts are not in dispute.³ The Debtor commenced this bankruptcy case in one last attempt to save his home at 111 Golden Eagle Drive in Venetia, Pennsylvania 15367 ("Property"). After a judgement in mortgage foreclosure was entered against the Property, it was sold to AAMD at a sheriff's sale conducted on July 8, 2022. Once AAMD received the deed to the Property, it filed an ejectment action in the Court of Common Pleas of Washington County, Pennsylvania ("State Court") and obtained a writ of possession. The sheriff served the writ on Ferris and scheduled January 18, 2023 as the date AAMD would receive possession of the Property.

On January 17, 2023, the Debtor filed an emergency motion in the State Court to set aside the sheriff's sale because he allegedly never received notice of the foreclosure action. Using a proposed form of order attached to the emergency motion and drafted by Ferris' counsel,⁴ the State Court entered the following:

> ORDER OF COURT
> AND NOW, this 17th day of January, 2023, Defendants'
> Emergency Motion to Set Aside the Sheriff's Sale is GRANTED and

---

1   See *Debtor's Emergency Motion to Enforce the Automatic Stay, Motion to Stay the Eviction and Request for Sanctions for Willful Violation of the Automatic Stay under 11 U.S.C. § 362* [Dkt. No. 14] (the "Motion").

2   See *AAMD, LLC's Response to Debtor/Movant's Emergency Motion to Enforce the Automatic Stay, Motion to Stay the Eviction and Request for Sanctions for Willful Violation of the Automatic Stay under 11 U.S.C. §362* [Dkt. No. 22] (the "Response"); *Expedited Motion for Relief from the Automatic Stay and Debtor Stay* [Dkt. No. 31] (the "Stay Relief Motion").

3   The facts are taken from the averments of the Motion to the extent they were deemed admitted by AAMD in the Response.

4   See *Audio Recording of February 8, 2023 Hearing* at 12:09:30–12:09:45 p.m.

> hereby ORDERED, ADJUDGED, and DECREED that the Sheriff's Sale that took place on July 8, 2022 regarding the property located at 111 Golden Eagle Drive, Venetia, PA 15367 is SET ASIDE until further order of court.
>
> \* \* \*
>
> SCHEDULING ORDER
>
> AND NOW, this 17th day of January, 2023, it is hereby ORDERED that an Evidentiary Hearing on the Defendants' Emergency Motion to Set Aside Sheriff's Sale shall take place on the 20th day of January, 2023, in Courtroom 1 at 10:30 am.[5]

Later that day, Ferris filed a voluntary petition for bankruptcy relief under chapter 13 of the Bankruptcy Code.[6]

Three days later, on January 20, 2023, the State Court conducted a hearing on the Debtor's emergency motion over the protestations of Ferris, who contended that the proceedings were now stayed by his bankruptcy case. The judge denied the request and proceeded to take evidence. After hearing testimony from Ferris and considering other matters of record, the State Court entered an order which denied the Debtor's emergency motion ("January 20 Order"). The State Court did not find Ferris to be credible, and as such, it "reinstated" the writ of possession in favor of AAMD. As part of its ruling, the State Court explained that its January 17 Order was entered *ex parte* and was not intended to alter the legal rights of the parties, but instead, preserve the status quo pending an evidentiary hearing on the merits:

> When Defendants' counsel presented the emergency motion to set aside the Sheriff's sale on January 17, 2023, there was no notice of presentation to AAMD and [the mortgage holder]. Under the circumstances, due process required that all other interested parties be informed that the Defendants were asking the court to take action materially affecting their interests. The court was not going to make a determination at a moment's notice in motions court without all other parties knowing of the Defendants' intentions. The court did

---

[5] See *Motion, Exhibit A* [Dkt. No. 16].

[6] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

3

> not even have the benefit of reviewing the record. Further, the Defendants' motions to stay the writ of possession and set aside the Sheriff's sale specifically asked the court to schedule an evidentiary hearing, stay the writ of possession, and set aside the sale *until further order of court*.
>
> \* \* \*
>
> Consequently, the court scheduled a hearing on the merits of the allegations … It was never the court's intention when signing the January 17, 2023, order that the property transfer back to the Defendants. Ownership of the property transferred by deed, recorded on August 4, 2022, to AAMD. No order of this court changed that.[7]

Following this decision, Ferris was served with a State Court order requiring all occupants to vacate the Property by February 7, 2023. AAMD denies that it had any involvement with the State Court's issuance of the order.

Through the *Motion*, Ferris seeks a finding that AAMD willfully violated the stay and requests an award of $2,000 for the infraction. AAMD denies that it violated the stay, either willfully or inadvertently, because it took no action to pursue the eviction after the petition date.[8] It contends that Ferris provided no notice of the bankruptcy until the morning of the January 20 hearing, and even if a stay violation occurred, it was the State Court who elected to proceed.[9]

The Court conducted a preliminary hearing on the *Motion* where Ferris withdrew his request for sanctions against AAMD for a willful stay violation. After hearing from the parties, the Court granted a brief continuance to see if they could work out a consensual resolution.[10]

---

[7] See *Motion*, *Exhibit B* [Dkt. No. 16] (Order of the State Court dated January 23, 2023 in AAMD, LLC v. Ferris, *et al.*, No. 2022-6931, Washington CCP, Wilmington Savings Fund Society, FSB v. Ferris, et al., No. 2021-1216, Washington CCP (emphasis original) (citations omitted)).

[8] See *Response* at ¶ 5.

[9] Id.

[10] See *Order of Court* dated February 15, 2023 [Dkt. No. 27].

4

The parties did not reach a settlement and AAMD filed its own motion seeking stay relief on an expedited basis.[11] AAMD contends the Property is not an asset of the estate because Ferris lacked any legal or equitable interest in the residence on the petition date, with such rights having been extinguished when the hammer fell at the sheriff's sale.[12] It also contends that even if Ferris had the right to redeem the Property, he lacks the financial means to do so.[13] AAMD further claims it lacks adequate protection and suggests the bankruptcy case was filed in bad faith as a means for Ferris to unlawfully retain possession of the Property.[14]

Ferris opposes the *Stay Relief Motion* and maintains that his bankruptcy case was filed in good faith. The bankruptcy schedules reveal that Ferris earns over $18,500 per month and his household disposable income is nearly $9,000 after deducting monthly expenses.[15] He seeks an opportunity to cure the deficiency owed on the mortgage now that the sheriff's sale has been "set aside" (under the State Court's January 17 Order) and filed a chapter 13 plan proposing to pay $2,426 per month over 60 months.[16] The bulk of the plan distributions are targeted for entities that held mortgage liens against the Property before the sheriff's sale.[17] The plan also proposes to pay a dividend of 100% to general unsecured creditors from an estimated pool of $27,830.[18] Significantly, the plan does not propose any payments to AAMD.

---

[11] See *Stay Relief Motion*.

[12] Id. at ¶¶ 30, 33, 34.

[13] Id. at ¶ 35.

[14] Id. at ¶¶ 37, 39-43.

[15] See *Schedule I: Your Income* at 19-20 [Dkt. No. 40]; *Schedule J: Your Expenses* at 21-22 [Dkt. No. 40].

[16] See *Chapter 13 Plan dated March 3, 2023* [Dkt. No. 42].

[17] Id.

[18] Id.

The Court conducted another hearing to consider the *Motion* and *Stay Relief Motion* on March 8, 2023 where the parties provided additional oral argument. This matter is now ripe for disposition.

## II.  JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.  DISCUSSION

Filing for bankruptcy creates an estate which includes all legal and equitable interests of the debtor as of the commencement of the case.[19] It also triggers the stay which, subject to certain exceptions, bars parties from taking action against the debtor or property of the estate.[20] Under the Bankruptcy Code, actions taken in violation of the stay are void *ab initio*.[21]

Before the issuance of the January 17 Order, Ferris lacked any legal or equitable interest in the Property. Ferris' right of redemption lapsed upon the sheriff's sale in July 2022,[22] and he lost legal title when the sheriff's deed was issued to AAMD in August 2022. By January 17, 2023, Ferris held only a bare possessory interest in the Property that was set to terminate upon his eviction the next day. Recognizing this, Ferris' belief that he had anything more than a possessory interest on the petition date rests entirely on the State Court's January 17 Order.

---

[19] See 11 U.S.C. § 541(a)(1).

[20] See 11 U.S.C. § 362(a).

[21] See In re Myers, 491 F.3d 120, 127-8 (3d Cir. 2007); In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); In re Vitale, 469 B.R. 595, 598 (Bankr. W.D. Pa. 2012).

[22] See 53 Pa. Stat. § 7293 (right of redemption exists within a 90-day window before a sheriff's sale).

When viewed in isolation, the January 17 Order purports to set aside the sheriff's sale of the Property, stripping AAMD of its interest. Ferris maintains that, by extension, it also reinstates his legal interest in the Property. Therefore, because Ferris filed for bankruptcy after the January 17 Order was issued, he arguably had an interest in the Property at the commencement of his case.

Yet the story does not end there. A few days later, the State Court issued its January 20 Order stating that it "was never the court's intention when signing the January 17, 2023, order that the property transfer back to [Ferris]."[23] The January 20 Order is somewhat ambiguous. It is unclear whether it takes away an interest granted to Ferris by the January 17 Order or clarifies that no interest was granted in the first place. Still, the practical effect is the same. The State Court's January 20 Order establishes that the interests of AAMD and Ferris in the Property are the same as they were before the January 17, 2023 Order.

Ferris argues that because the January 20 Order was issued post-petition, it is void as a violation of the automatic stay. Although this argument is logical on the surface, the situation is not so simple. Even if the January 17 Order reinstated Ferris' interest in the Property (as he claims), it does not follow that the January 20 Order constitutes a stay violation. Section 362(a) prevents action from being taken against the debtor or property of the estate.[24] Here, Ferris brought the emergency motion in the State Court to set aside the sheriff's sale. Therefore, despite occurring post-petition, the State Court's determination on the merits of Ferris' own motion is not action

---

[23] See *Motion, Exhibit B* [Dkt. No. 16] (Order of the State Court dated January 23, 2023 in AAMD, LLC v. Ferris, *et al.*, No. 2022-6931, Washington CCP, Wilmington Savings Fund Society, FSB v. Ferris, et al., No. 2021-1216, Washington CCP).

[24] See 11 U.S.C. § 362(a).

7

taken *against* the debtor.[25] Ferris cannot argue that an action he initiated is violative of the stay just because the results are unfavorable.

Assuming that the January 17 Order stripped AAMD of property rights, it is just as likely, when considered in isolation, that the order amounts to a due process violation. When Ferris brought his emergency motion in State Court on January 17, 2023, there was no notice given to AAMD. As the State Court rightfully points out in its January 20 Order, "[u]nder the circumstances, due process required that all other interested parties be informed that [Ferris was] asking the court to take action materially affecting their interests."[26] It follows that even if it was the State Court's intention to reinstate Ferris' interest, under the circumstances such an order would be improvident. Hence, AAMD would be well positioned to request relief from stay to appeal.

Notwithstanding the foregoing issues, the Court must decide how to move forward. Although there is significant ambiguity surrounding the effect of the State Court's orders, it is still clear that no matter which way the Court looks at the facts, there are only two reasonable options for relief.

The first option is to retroactively annul the automatic stay, thereby ratifying the January 20 Order. A bankruptcy court may grant retroactive relief and annul the automatic stay when circumstances justify such action,[27] such as when there is "cause" to do so.[28] The Bankruptcy Code does not define "cause." The determination is thus made case-by-case, considering the totality of the circumstances.[29] Factors often considered are: (1) whether the parties were aware

---

[25]   By contrast, the subsequent order directing Ferris to vacate by February 7, 2023 was a stay violation.

[26]   See *Motion, Exhibit B* [Dkt. No. 16] (Order of the State Court dated January 23, 2023 in AAMD, LLC v. Ferris, et al., No. 2022-6931, Washington CCP, Wilmington Savings Fund Society, FSB v. Ferris, et al., No. 2021-1216, Washington CCP).

[27]   See In re Myers, 491 F.3d at 127-8; In re Vitale, 469 B.R. at 598.

[28]   11 U.S.C. § 362(d)(1).

[29]   See In re Leeds, 589 B.R. 186, 193 (Bankr. D. Nev. 2018) (whether "cause" exists to annul the stay is determined by a "balancing of the equities" test); In re Rupari Holding Corp., 573 B.R. 111, 120 (Bankr. D.

of that the stay was in effect, (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior, and (3) whether failure to grant retroactive relieve will prejudice the creditor.[30]

Applying the first factor, both AAMD and the State Court learned of Ferris' bankruptcy filing on January 20, 2023 – the morning of the evidentiary hearing. And both parties proceeded with the evidentiary hearing despite knowing the stay was in place. Even so, because the evidentiary hearing was scheduled on Ferris' own motion, the parties' knowledge of the bankruptcy is less significant. AAMD did not initiate a new action against Ferris or estate property, and even if the hearing itself might constitute a stay violation, AAMD maintains that it was the State Court's decision to move forward.

Second, the record supports a finding that the Debtor engaged in inequitable and unreasonable behavior. It was both inequitable and unreasonable for Ferris to request substantive relief on an *ex parte* basis without notice to other parties, and without alerting the State Court judge to his true intentions. Although perhaps not actively dishonest, the Court also finds that withholding such information is still deceitful. At best, Ferris should have requested a stay of the ejectment pending a ruling on the merits on his petition to set aside. The language included in Ferris' proposed order is also significant because if it had it been noticed by State Court judge, it likely would have been deleted. While suspect drafting of the proposed order is not inequitable or unreasonable on its own – Ferris' subsequent actions raise concerns that it was intentionally written in an effort to bamboozle the State Court.

---

Del. 2017) (to find "cause," courts conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances); In re Vitale, 469 B.R. at 598 (bankruptcy courts are given wide latitude to balance the equities when granting relief from the automatic stay); Christian v. Citibank, F.S.B., 231 B.R. 288, 289 (N.D. Ill. 1999) (cause is determined on a case-by-case basis).

[30] Some courts view these three factors as the "most important factors in making this determination." See In re Myers, 491 F.3d at 129.

Ferris' behavior also suggests that he filed for bankruptcy in bad faith – i.e., solely to avoid the prior sale of the Property to AAMD. Some courts have found specifically that a debtor's lack of good faith in filing supports "cause" for retroactive relief.[31] Ferris filed for bankruptcy right after obtaining a seemingly favorable outcome and then used the automatic stay to object to a continuation of the proceedings he initiated. This implies that Ferris only filed for bankruptcy to preclude the State Court from deciding the merits of the parties' property interests.

Ferris' proposed chapter 13 plan also suggests bad faith in that it is drafted as if the sheriff's sale never happened. The proposed plan provides that the bulk of the plan distributions be made to entities that no longer hold mortgage liens against the Property. It also fails to provide for any payments to AAMD – the source of the sale proceeds that were applied against the mortgage liens. What is more, the amount of the proposed plan payments hints that Ferris lacks a genuine interest in reorganization. Despite a stable financial situation and available disposable income, the proposed plan payments are disproportionately low. To be clear, a debtor is in no way required to pay off their creditors as fast as possible. That said, Ferris' decision to draw out his bankruptcy with small payments, under the circumstances, is telling.[32]

Third, if the Court declines to annul the stay and grant retroactive relief, AAMD will undoubtably be prejudiced. AAMD is not a creditor of Ferris. Rather, AAMD purchased the Property months prior to his bankruptcy. If retroactive relief is denied, AAMD will lose its established legal title, earned through a substantial payment to sheriff's office. AAMD will also be forced to expend further resources appealing the January 17 Order, which likely was

---

[31] See generally Baxter v. Sarmadi, 602 Fed.App'x. 322 (6th Cir. 2015) (bankruptcy court did not abuse its discretion in finding that cause existed to annul the stay based on a debtor's lack of good faith in filing.); In re Albany Partners, Ltd., 749 F.2d 670, 674-5 (11th Cir.1984) (affirming retroactive stay relief on the basis that the debtor did not file petition in good faith); In re Dupuy, 308 B.R. 843, 848 (Bankr. E.D. Tenn. 2004), amended (Mar. 30, 2004) (the stay may be annulled under extraordinary circumstances, which can include a debtor's bad faith filing of the bankruptcy).

[32] Also, Ferris has yet to put a wage attachment in place as required by W.PA.L.BR. 3015-2.

improvidently entered. Therefore, denying retroactive relief in this case would be highly prejudicial to AAMD.

Alternatively, the second available option is to enforce the stay and invalidate the January 20 Order, leaving the January 17 Order in place. Ferris would prefer that the Court choose this path. Yet the Court believes his desire is misguided because this option only preserves his alleged interest temporarily. Given that the January 17 Order, on its own, likely constitutes a due process violation, the Court would grant AAMD prospective stay relief to appeal or seek reconsideration. Further, because the State Court judge already clarified that the January 17 Order did not alter any substantive rights of the parties, it seems likely he would reach this same conclusion when faced with it a second time. Therefore, invalidating the January 20 Order would merely delay the inevitable and compel the parties to expend more resources in litigation.

In sum, the result of both options is substantively the same – one just gets there more quickly than the other. The Court thus opts to avoid needless delay and expense by granting retroactive stay relief. Not only is there cause to do so, but retroactive relief will prevent any unnecessary expenditure of the parties' time and money and will preserve judicial resources.

## IV.    CONCLUSION

For these reasons, the Court finds that, notwithstanding any stay violation by the State Court, AAMD is entitled to retroactive stay relief. To the extent not already withdrawn, Ferris' request to enforce the stay is denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated:  March 31, 2023

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case Administrator to Serve:
Debtor